Our first case of the afternoon, Adams v. Board of Directors of the Illinois Teachers Retirement System. For the appellant, Ms. Rowe, and for the appellee, Mr. Lowenstein, you may proceed. Thank you. May it please the court, counsel? I know the court is familiar with what both parties have filed, so I will not— I think that'll—the court has some questions. But what we are faced with here is a situation that John Adams said where a law of nation—I'm sorry, where a nation of laws, not of men. What the Board of Trustees for the retirement system has done is what they wish the law provided. And that's an issue they should take up with the legislature. Your client was indicted. Why wasn't she convicted? Because the jury found her not—well, first of all, she was never charged with a felony. She was—there was a misdemeanor that had nothing to do with the position. She pled as a negotiated plea. I was not involved in the case. And that has actually been expunged from the completion of supervision. But there was never a charge—a felony charge. Why? I can't address that question other than to say the state did believe it had the evidence that she had committed the crime. Isn't it felonious behavior, which she's admitted to before us? No, sir. This doesn't constitute a criminal action, felony criminal action, what happened here? It doesn't. What she did—no, sir. What Mr. Poble did, absolutely. And he was convicted, and his benefits were withheld, as they probably should be in accordance with the law. But what Ms. Adams did was pay part of the money she received for the extra duties that she performed to Mr. Cole under the belief that he, with the power that he had, would fire her if she did not. Well, she could have said no. She should have said, I'm not going to do it at all. She could have. And I'm not here defending the decision that she made, Your Honor. My contention—Mr. Justice, I'm sorry. It's okay. My contention is simply that that does not require the removal of the benefits that she earned under the retirement system as the law is written. Specifically, the law provides if there was a felony conviction. There was not. There's no issue by TRS that there was a felony conviction. She worked for the Regional Office of Education from 1991 in one position. She took on extra duties in 1999. She went to her boss, and she asked for additional compensation for those additional duties. Extended hours, she developed a program, she kept running the program. Initially, he said no. Subsequently, he said yes. But then he said, but you have to pay me half the additional compensation you received. There's still no question that she did the work for which— TRS is giving her credit for the money she personally kept, are they not? No, sir. You mean the 50% she kept, they're not giving her any credit for? No, sir. I thought it was only the 50% that she gave to COLE. That was initially what they did, and then they modified that, and they took it all back. In addition to that, they've never even offered to refund the contributions that she's made. If anybody's been unjustly enriched in this proceeding, it's TRS. I mean, if they're saying that she didn't earn the compensation, it's not salary under their interpretation, then why did they keep the actual contributions that were deducted from every paycheck she received? But no, sir, they did not. And I think it goes— I think it's tantamount to an admission, while they try to say she didn't give consideration for the additional compensation she received, she stopped making the payments to COLE in 2004. She worked an additional year. TRS has never suggested that that additional year of compensation wasn't earned, nor that they should recover that. I think that's tantamount to an admission. She was paid for the work that she did. And the state of Illinois, who was her employer or funding the regional office of education, has never suggested, has never attempted to recover their money. They've never said she didn't earn it. In fact, if there was anybody who had standing to argue there was constructive trust, as TRS now tries to independently do because the statute doesn't allow them to do what they did, that would have been the state of Illinois.  Because COLE took money, he wasn't included. But the state of Illinois and the regional office of education has never said she didn't do the work and she didn't earn the compensation because they got what they bargained for, the additional hours and work on the juvenile detention educational program. And that's the money she earned. What she did with it, and I'm not here justifying what she did, and if I had been asked to advise her when this was going on, I would have said, absolutely, you don't do that. Nobody's saying what she did was right. But what she did was not illegal. Prosecutors... Did she pay taxes on this money? Yes, sir. She paid them. It was withheld by the regional office of education. She paid state income tax, she paid federal income tax. On a full amount? Full amount. And she paid the amount that went to TRS from every patient. That was withheld and paid to TRS. They've never talked about that money. I don't understand they can say it's not illegal, counsel. It's been a long time since I was a prosecutor, but I would have no trouble figuring out ways to charge her as, at a minimum, an accomplice to COLE. The point here, your honor, is the prosecutor did not. The statute says... Does that bind TRS? The prosecutor's malfeasance? Is that binding upon them to decide that they nonetheless have to look at this as, gee, just a straight-arms-length transaction? Your honor, Mr. Justice, with all due respect, I think the legislature, they didn't say, if you, TRS, in your discretion, believe that somebody has committed a felony, you can withhold this money. What the statute says is, if an individual is convicted of a felony with respect to that position, and one of the cases that we cited, and I believe it was Barrett, the question was, there was pension money from one position, that of township supervisor, there was money from the mayor's position, where clearly he engaged in felony. And the court said, although the pension board wanted to withhold all the pension from both positions, the court said, no, it's only from the position in which the felony conviction was related, and that was the mayoral position. And that's the issue here. There is no felony conviction. That's specifically what the statute requires. What would have happened if Cole had been honest and adhered to his initial position that, no, we're not going to hire you for this job and pay you extra? Well, she was already hired. This is not an issue about two separate jobs. This is an issue about additional duties. What would my client have done? I don't know. You know, your honor, you're asking me to speculate. I'm going to guess she was concerned enough about doing the work. She would have kept doing the work without the additional monies. I have no reason to believe otherwise, but she didn't. I mean, she executed poor judgment without question. Did she commit an illegal act, at least as far as the state of Illinois is concerned? In the federal courts, she did not. And what we're asking the court to do is a very tough thing that the court is here for the very reason to do, to interpret or look at the law and see what the law itself requires. In fact, it's interesting, your honor, that's exactly what happened in the, I may not be pronouncing it correctly, the Tatio case. And the Supreme Court stepped in when IMRF wanted to withhold benefits. And in fact, the interesting part is the general counsel for TRS, Thomas Gray, wrote an amicus brief for the IMRF. And I'm very positioned that the Supreme Court overruled it and said, you don't have the authority to do this. We reversed it. You've got to look at what the, we're asking the court to do just what the court does. Look at what the law requires. Well, let me see if I understand correctly. The work Ms. Adams was doing was at the Youth Detention Center in Franklin County? What she did was create and operate a juvenile detention educational program that was part of the Franklin Williamson Regional Office of Education. She did that? In addition to the Project ECHO that she'd been doing for the first eight years of her life. What was her role? She was supervisor of Project ECHO? I believe that was the, I'm not sure if that was the exact title, but she was the one operating that particular program. And she was, this was an alternative high school? Yes, as I understand it. She was hired by the regional office, Franklin Williamson Regional Office? Yes, in 1991, I believe. And then in 1999, was asked to help to develop a program for the juvenile detention educational program as an additional, and she spent additional hours. And she did that? And she did that. And the interesting thing here, Your Honor, as we pointed out in the brief, the TRS has been very liberal with its interpretation of the record. Because they say she never did the work, and she admitted she never did the work. And there's no cite to any record, because that's never what she said. And in fact, if you look in the record itself, and it's in our brief at page 5, and in the court's record at 291, I believe, the stipulation of the parties was that she says she did all this, and TRS has absolutely no evidence that she didn't do this work. There's no evidence in the record that she didn't do the work. She's an employee of the regional office, and they asked her to do this work at the detention center, and she set up a program and did it. And she said, Ann, I'd like to get additional monies for it, and Cole first turned her down. Is that what happened? Yes, sir. Well, they asked her to take on additional projects, additional duties, and extended hours. But yes, basically. Correct. And he turned her down, and she continued on the job anyway? Yes. And then she asked again sometime later? Yes. And that's when Cole came up with his scheme? Yes, sir. Well, as the record reflects. Okay. Now, here's what I'm wondering. She's doing the job. How about a different sort of situation? How about someone who is working as a lawyer for the city of Springfield and getting paid X dollars and asks for a raise, and the municipal council for the city of Springfield says, well, I'll give you an extra $50,000, but you have to give me 25 of it in some kind of cash version. And this is essentially what the lawyer agrees to. And we have the same sort of issue coming up then. Wouldn't it be appropriate or justified for them to view the entire $50,000 as part of the scheme, all of it? That this person was doing the job and was going to continue to do the job or could have quit, but that the only reason the lawyer got any additional monies at all is because the corrupt head of the municipal department decided to split the additional monies. Well, I'm not sure what you're asking me. Why isn't that the same as what happened here? And why isn't this something which could literally, particularly since we are blessed with the city of Chicago and Clark County in the state of Illinois, why isn't this something which might very well be going on and just not discovered? And if discovered, say, well, give them all their full credit. Well, there's two differences and one similarity. Okay. First of all, in terms of the differences, the attorney has a job as just being assigned things to do in part of that job. What Ms. Adams had was a job description and a job duty and asked to take on additional job duties. And under the pension statutes, salary is defined in part about taking on additional duties for additional compensation. There's nothing in the record that says she didn't have additional duties, didn't continue to do the additional duties. And TRS's argument is she wasn't salaried because she didn't give consideration. It's nice in the face of their determination that somehow it was sufficient consideration to be salaried in 2005. Can't have it both ways. But where these two situations are similar is the statute. Got to go back to the law, Mr. Justice. The law says there has to be a felony conviction. Not a decision by TRS that this would be a felony conviction, but an actual felony conviction. Should the law be that way, that's up to the legislature. If TRS wants it to be that way, they should go back to the legislature and ask for the language of the law to be changed to do that. Well, what about the definition of salary which is argued here as the actual compensation received by a teacher during any school year and recognized by the retirement system in accordance with the rules of the board. Why isn't that? And then there's some additional administrative regs defining salary more specifically as any emolument of value recognized by the system that is received actually constructively by a member in consideration of the services rendered as a teacher. Why isn't there something there which gives the board a colorable authority to decide whether this is all legit? Well, if that's the case, Your Honor. I'm sorry, Mr. Justice. It's okay, Your Honor. It's just behind our judges. It's okay. I'm sorry. But in this particular case, here we've got TRS saying, in effect, the money that you received for the work that you did in fiscal year 2005, that was fine. That's salary, that's consideration. We're not arguing we should get that back. They can't say it's not salary in one case and not salary and this salary in the other when it's the same exact work for the same period, I mean, for the same duties, the same additional duties, and they're not saying it's different. So TRS's problem is that they didn't cut her off on 2005 as well? It is. Had they done that, would you be here? I would. It's an inconsistency. It's an inconsistency. But it's an inconsistency that tracks, I mean, aren't they effectively saying, once you stop paying kickbacks and it appeared to your regional office that you were doing this work, that that is then a salary recognized for work that you're doing. It's the participation in the scheme that makes it or one could argue renders it ineligible as a salary. Not whether you actually are doing the work, but paying the kickback, I mean, getting the salary increase as part of a kickback scheme and continuing in that scheme, and not only continuing in that scheme, but embroiling another employee of the district in the scheme and facilitating additional monies being paid to the regional superintendent. Once that's stopped, it doesn't make you lily white, but apparently you're doing the duties, okay, we're not going to argue about that part of the salary. I mean, on the one hand, it's inconsistent, and on the other hand, it's a practical application of reality. Well, two things. First of all, in terms of embroiling the other employee, first of all, that was never a reason given by TRS for doing what they did. Well, no, but that's part of the facts of the case. Well, if you look at TRS's brief, they say, arguably, it's an unclear record. Now, certainly, there was testimony... So this didn't happen? About embroiling her? I mean, Ms. Adams certainly took part of the... She was the intermediary between Cole and Davis. I don't know if she was only the intermediary, but she certainly was involved. But back to the question about the part that goes back to Cole. Well, first of all, TRS says, okay, the money that went to Cole, you didn't earn that. But now they've just had all of it, and she was still doing the same duties. So another inconsistency, if you're saying that the argument is that it's the money that went to Cole, it didn't go to her. But again, it goes back to salaries, if you're doing consideration and you're doing the duties, the additional duties. I think TRS overstepped its bounds. It doesn't have that authority. It meets the definition of both the statute and the regs. It's a public kind of argument. This is the way it ought to be. And I'm not disputing whether it should or it shouldn't. In fact, I would think that's something reasonably the legislature could decide to do. But it is not what the legislature has done. And that's what we're asking this court to do. Well, what about when you say the legislature has done, and you also argued that she has to be convicted of a felony, what about this definition of salary as set forth in Section 16-121? What did the legislature mean when it said, and recognized by the retirement system in accordance with the rules of the board? Doesn't that give them some colorable basis to examine the salary beyond just you were paid X? That's it? Well, I think it's did you do the work for which the compensation was paid? And there's nothing in the record, nothing TRS has ever pointed to, nothing in the rules that say, well, we can just ignore that she actually did the work. And we're looking at what she did with the money after she received it. There's nothing in the regulations that says if you're in a scheme. So your argument is this is to address ghost payrollers, or what? I'm not sure. I'm sorry, sir. Ghost payrollers, people on a payroll who didn't do anything? May I respond? Yes, please. No, because there's not an issue about whether she did the work. There's nothing in this record that says she didn't do it. In fact, the only evidence in the record is that she performed all the additional duties for the compensation that was received, despite TRS wanting to argue that there's not. Their stipulation is that they have no evidence that she didn't do that. And if they were going to take action, they'd have to have some evidence that she wasn't really doing the work or was, in fact, as you referenced, a ghost employee. Thank you, sir. Thank you. May it please the Court, Counsel? There are two issues before the Court in this case. The first issue is whether or not compensation paid to Ms. Adams as a result of her scheme with her boss to kick back a portion of that qualifies as salary under the TRS rules and regulations. The second issue in the case is whether or not TRS properly imposed a constructive trust over the increase in the pension benefits that would have resulted from this corrupt scheme. Now, Counsel, today and in her brief and earlier before the Circuit Court, has really put up a smokescreen with regard to this whole felony conviction statute. It doesn't have anything to do with the case. It's not a felony conviction case. We're not maintaining it's a felony conviction case. We didn't take away her entire pension. But that doesn't detract the ability of TRS to do what they did. The first issue has to do with the interpretation of the regulations. And before we get into that, in order to interpret the regulations, we have to look at stipulation number five, which we've attached as part of the abstract of the brief. And that stipulation stated as follows. Cole agreed to Adams' request for a pay increase on condition that she pay to him one-half of the net after-taxes proceeds on a monthly basis. That's a key fact there. Then we look to the regulations of TRS, and particularly 80 Illinois Administrative Code 1650.458. And that regulation, which Justice Steigman has mentioned earlier, states in pertinent part as follows. Salary means any form of creditable compensation received by a member in consideration of services rendered by a teacher. Key words in that are in consideration of services rendered by a teacher. The stipulation... Let me ask you, counsel. You don't cite any cases interpreting or applying that statute, and I guess the reason you don't is probably because there aren't any. The regulation you're talking about? Well, first, the statute. Defining salary as recognized any compensation as recognized by the retirement system in accordance with the rules of the board. There are a lot of cases defining salary in terms of the regulations, but they don't really have anything to do with this. I mean, we were just here several months ago in the Sartwell case in which the issue was whether or not something qualified as credible earnings under the definition of salary. It was a conversion case. It didn't have anything to do with a situation like this. Well, let me just ask it this way. It's kind of the same question I asked Ms. Rohde. What did the legislature mean when they threw in this qualifier in section 1621 that salary was actual compensation received by a teacher and recognized by the retirement system in accordance with the rules of the board? What was that? It basically gave the U.S. the authority to define salary, which they have done in their regulations. Of course, it's subject to review by a court. You reviewed it in the Sartwell case. It's been reviewed in a lot of different situations, none of which really pertain to this situation. But the board defines salary as kind of a circular definition. Is any value recognized by the system? That's by the board, isn't it? But the regulations do define this. We didn't just say, we're going to do this on a piecemeal basis. We've actually promulgated regulations which have been found to be valid. As I said before, this court addressed not this issue, and I don't even want to imply that, but you looked at some of these regulations defining salary, and you didn't say the regulations were bad. You disagreed with me on one point, which, you know, that's your job to do. But you didn't throw out the regulation. You didn't say the regulation defining what constitutes salary is bad. And this regulation clearly says that it's creditable compensation received by a member in consideration of services rendered by a teacher. She received the pay increase by her own stipulation, not for services rendered by a teacher, but because she agreed to kick back part of the increase in her salary. Well, what about the fact she was performing these teacher services, as you heard Ms. Rode argue? That's a good question. And it's one that she argued quite vigorously, and one that you asked her about. Just because someone performs extra duties, as she says, doesn't mean that they're entitled to extra pay. There's thousands and thousands of people in this state who are asked by their bosses to perform additional work that don't receive anything additional. And in fact, she asked him originally for a pay increase, and he said no. It was only after she agreed to kick back a portion of that that she got her pay increase. Why did the... Is it accurate that the board is giving her credit after she stopped paying the kickback, but was performing in essentially the same capacity? They are. And quite honestly, if I was on their side... You wouldn't advise them to do that? If I was on the other side, I wouldn't be talking about that very much, because I think that she got a really good deal here. I think she could have allowed the whole thing. How about the good deal of... I mean, I think it probably is a modest amount, but if it isn't a salary, then why does TRS keep her contributions? Oh, well, no. They're going to have... At some point, they'll have to be refunded. Once this case is decided in the way I think it will, those contributions on the excess amount will be returned. They will be returned. She's right on that. They haven't yet, because we're still awaiting a final determination. She raises several different arguments, some of which have already been addressed in questions here, both to myself and opposing counsel, but I'll address some of the others. One of the arguments she raised was that this came within the extra duties example of salary, which is found in 1650.450b2. That does not apply clearly. There was nothing extra about this. This was part of her job responsibilities. That particular portion of the regulation is designed to address a situation where a teacher receives a stipend for doing lunchroom duty or for having a club sponsorship by a yearbook. There was nothing extra about this. This was just part of her job responsibilities. Another argument she raised is this sort of lifestyle argument. Hey, whatever I do with the money after I earn it is my business. If I want to buy illegal drugs, if I want to go gambling with it, that's nobody's business but my own. The fallacy with this argument is that it wasn't what she did with the money after she got it that's the problem. It's how she earned the money. She didn't earn the money because of services rendered as a teacher. She got the money by this corrupt scheme. Is she correct, by the way, correcting my understanding, that the board gives her no credit for any part of it? That's right. Originally they denied the half that she paid to Mr. Cole and when it was appealed to the Claims Review Committee and ultimately the board, they disallowed the entire amount. The second issue that wasn't addressed by counsel but I think is equally important is this whole constructive trust issue. TRS imposed a constructive trust over the increase in the pension benefits that would have resulted had she been given credit for this corrupt scheme. Constructive trust is an equitable remedy and it's designed to prevent unjust enrichment and it's been implied in a number of situations involving public corruption cases. The first of those was County of Cook v. Barrett which we cited in our brief and there's a very good quote in that which I think explains the constructive trust issue and if I might... When did this constructive trust issue come up? It came up as part of the proceedings before the Claims Review Committee. Was it argued in the appellant's original brief? Yes. It was an issue that was raised as part of the record before the TRS Claims Review Committee and it was also argued in the circuit court and of course it's been argued here. In fact, it's part of the TRS's decision which was approved by the board. But in that Barrett case, the appellate court said as follows, the absence of an allegation of damage is immaterial. Constructive trust is not an action for recovery or compensation under any theory of contract or tort. It's a strictly equitable doctrine applied to cure a fiduciary's breach of his duty of loyalty by erasing the source of his conflict of interest and transferring it to the innocent beneficiary. Bad faith is not an essential element of disloyalty and good faith is no defense to the charge. Courts are not interested in a fiduciary's particular motive for accepting a payment or gift but rather with the general effect of such payments or gifts. Nor are courts concerned with the question of actual damage to the beneficiary. The constructive trust doctrine in public corruption cases has been applied to recover from those people who are paying bribes, those people who are receiving bribes. It's been applied in situations where the courts have found that there's no need to find a fiduciary obligation between the parties. If we agree with you, what would happen? Where is the constructive trust in this case of what sums and why? What would happen in this case is exactly what we have already done. We have essentially disallowed the increase in the pension that would have resulted from this corrupt scheme. Her pension benefits will be reduced by that amount because she will not be allowed to receive credible earnings and we will recoup the amount of additional payments that have been made to her as a result of this corrupt scheme. It's another way of getting to the same point. Since your client is the one who is determining the pension and paying out and keeping it, what does a constructive trust analysis add given the peculiar nature of who your client is? You just said you're right to disallow her this money. If you rule on the first issue of the definition of salary, we will arrive at the same ultimate point if you rule on the constructive trust issue. However, I would say to you that this would be very instructive going forward to other pension systems and I think it is very well supported by the law that pension systems do have a right to impose a constructive trust where situations similar to this might exist to prevent unjust enrichment. Well, Mr. Lowenstein, you're a real expert in this area and I am really not. So it's a basic question. If we agree with you that you shouldn't be credited with the amount of salary at issue, what is the difference if we say that's correct and period, or if we say yes, that's correct and a constructive trust of whatever should be imposed? I still don't understand what the additional step, what that remedy adds. Well, I'm not going to turn down a win on whatever basis you might want to give it to me. But nonetheless, educate me. But I would say to you that the doctrine of constructive trust has been applied in a number of public corruption cases. This is the first public corruption case that I'm aware of where we have sought to impose a constructive trust in a pension case. But I doubt very seriously... But did the O&I teacher's retirement system impose a constructive trust? Yes, they did. That's part of their finding in the ruling? If you look back at the recommended decision of the Claims Review Committee, that is clearly addressed and that was, of course, approved by the Board of Trustees. Yes, that is part of the basis for its decision. It's not the only basis because it was based both upon the disallowance because it didn't constitute salary, but alternatively on the constructive trust remedy as well. Let me go back to the merits of this case. In order for the Board to reach the conclusion it did, did the Board have to conclude that the extra work Ms. Adams was performing was work that she was going to perform no matter what? No. Consistent with her job? No. That is accurate. It's not extra duties. And whether she would have performed it or she didn't is really not germane to our decision. But the reason we disallowed it was because if you look at Stipulation 5 and you look at the record and you look at the deposition testimony and the grand jury testimony, there's no question she got the pay increase because of her agreement to kick back a portion of it to her boss. That's why she got it. Let me change the question. From her point of view, if I understand it correctly, he's saying, well, I wouldn't have done this and the state wouldn't have benefited, the regional office wouldn't have benefited, unless I had performed this additional work or extra work, whatever you want to call it, but for getting this additional salary I wouldn't have done it. Isn't that essentially what she's saying? Well, I don't know if she's saying she wouldn't have done it or she would have, but let's say she hadn't done it. And let's say that she just continued to make, instead of $24,000 addition, she made her base salary and she didn't do the work, and that's what she would have gotten credit for, base salary, and we would have been just fine. But everybody who is assigned extra responsibilities doesn't get a pay increase. This court doesn't get a pay increase just because your workload goes up, because your caseload goes up. She wasn't entitled to this. She got it because she agreed to kick back a portion of her salary. If the agreement had been for her to kick back the money not to him but to the church, would that have been different? Well, I think it probably would have been different, but I'm not sure it would have been kosher, if you will, because it wouldn't have been consideration for services rendered as a teacher. It would have been because she agreed to make a contribution to your favorite charity. That stuff, unfortunately, happens too in public corruption cases, certainly political contributions and things of this nature, whether we recognize it or not. Do we need to make a factual determination? By the way, we're reviewing a board's decision. Right. Did the board make a factual determination as to whether this work would have been done or whether she would have continued to do it? No, they didn't make a determination. So we don't know. There was really no way of making it. I think the real key here is why she got the money. So your position is we need not concern ourselves with those questions? I don't think you do. No, I don't think you have to. Whether she did the work or she didn't do the work, whether she would have kept the job or not kept the job, I don't think you have to address that. I don't know that there is a way that you can address it, quite honestly. I'm just concerned about what if it was all legitimate, what if it was needed, what if she performed good work? None of that matters. What if this court gets an increased caseload? Do you say I'm not going to do the work? Do you say I'm entitled to a pay increase? Or is it just part of your job responsibilities? This is just part of her job responsibilities. She got the money because she agreed to pay a kickback. She wasn't entitled to it. People aren't entitled to... So the beginning and end of the analysis as far as you're concerned is what you just said. The only reason she got the money is she agreed to a kickback. But for that she wouldn't have gotten the money and there's nothing else to talk about. That's right. Although I'd like you to talk about the construction. I have to confess, counsel, I still don't quite understand where we're going with that aspect of it. Well, I think you would be very instructive to pension systems throughout the state on how that works. And I think that it was clearly raised here and it is clearly an appropriate legal issue. Now, of course, it will be up to you how you decide. It's raised by you in your brief, not by the appellant.  It's an alternative finding by the board, which you like and you'd like us to rule on. But you also acknowledge we may not need to rule on it if we rule in your favor on the other issue. I clearly acknowledge that. I will take a win on whatever basis you want to give it to me. But I do think it's an appropriate issue before the court because it was raised before the board of trustees. And, of course, as the court knows, you can affirm on whatever grounds was properly raised below. But, you know, it's up to you whether you choose to address it or not. Thank you very much. Thank you. Ms. Rode? Is it Ms. Rode or Rode? Rode. Pardon? Rode. Rode. Thank you. Thank you. I think the reason that the board raises the constructive trust is because it recognizes, hopefully, although not admittedly, the weaknesses of its argument. It doesn't, the statute doesn't provide them with the authority to do what they did. And they point to no specific regulation that allows them to do what they did. They just say they have the right to consider this wasn't sound. But the definition in Chapter 80, Section 1650.450 says, An example of credible compensation recognized as salary is additional compensation earned during the school year for the performance of extra duties. That's exactly what we have here. And while they say, they keep pointing back to stipulation number five, that Cole agreed to give Adams the pay raise on the condition to pay it over one half of it to him. There is no stipulation. There's nothing in the record that says if she hadn't agreed to do that, he wouldn't have given her the salary increase when she requested it this time. Well, to the extent that we're reviewing a board's determination, and we have to be deferential to its findings of fact, if it's a factual finding on this record that the only reason she got the additional money is because she agreed to a kickback, don't we have to conclude for your argument to prevail that that was unreasonable? No, that's not the finding, Your Honor. The stipulation was he agreed to do it on that basis, not that that was the only basis. That he wouldn't have done it otherwise. But what I think is also interesting is in the appellee's brief, there's often discussion about what the record says, but without citation to the record. There's comments about what the grand jury testimony says without any specific reference to the record. Because it's an interpretation, again, by the board as to what the record means, as opposed to what the record says. Well, is the board entitled to make a determination, as the administrative agency involved here, that she wouldn't have gotten this additional money but for the kickback? I think their obligation is to interpret what the facts provide. But the agency is the fact finder, aren't they? Well, no. They're going back and they're saying, you know, this was criminal conduct. They're looking at all kinds of different things, grand jury testimony. They're not just saying they've made a factual determination in terms of the actual investigation of the situation. They made a decision after the fact. They decided, you know, same way they decided, well, what she paid over to him shouldn't be salaried. Now it's whatever she got shouldn't be salaried. It was never a question about she didn't do the work until we get to the briefs, where they say, well, you know, she didn't do the work, and that's what's in the testimony. And that's not what's in the testimony. You still have to look at whether it's true. Justice, can I raise the question about constructive trust and how it's apparently that whole issue isn't discussed in your brief to this court? I'm sorry. Is that correct? Did you intend to raise it or talk about it or what? I'll talk about it here. I thought the issue was here. My stressing of the issues is whether the law allows for what they did. The statute specifically does not allow them. I argue the regulations do not specifically allow them. And I find it interesting they said, well, I'm right, that at some point in time they'll have to give her the money back. But they already made the decision to take the money from her. Why didn't they credit her with what they're saying? Well, she should have gotten it back. They could have adjusted it later on. I think it's kind of a, well, I raised it today. They certainly have to say something about it. They have, with all due respect, it's TRS that's being unjustly enriched by its actions. The state is the one who paid the money. They say it's salary. She did the work. That was never an issue. Bad judgment, not defending what she did. But the issue here is what the law requires. And it is our argument to this court, with all due respect and hope, that we look specifically at what the law allows and not give TRS the unfettered discretion to make its determinations about what it thinks it should be and whether she should have received the money. The question is whether the law requires her to get the benefit of the pension law that was operating at the time for the work that she did, for the money that she earned, for the services she provided. Thank you, counsel. We'll take the matter under advice. Thank you, sir. Thank you. Thank you. You're welcome.